**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harvey POWERS, et al., Defendants–
Appellants.**

Nos. 98–3734, 98–3735, 98–3758, 98–3784, 98–3785, 98–3787, 98–3791, 98–3793, 98–3833, 98–3834, 98–3855 and 98–3856.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 4, 1998.

Decided Feb. 5, 1999.*.

---

* On December 24, 1998, this court issued an order dismissing these appeals. This opinion explains the reasoning of the panel.

Thomas P. Schneider (submitted), Office of United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Christopher T. Van Wagner, Madison, WI, for Defendant–Appellant Harvey E. Powers.

Pamela Pepper, Cubbie & Pepper, Milwaukee, WI, for Defendant–Appellant Allen McVay.

Edward John Hunt, Milwaukee, WI, for Defendant–Appellant Raymond L. Morgan, Jr.

Ann T. Bowe, Milwaukee, WI, for Defendant–Appellant Carl J. Warneke.

Michael R. Barth, Burlington, WI, for Defendant–Appellant Richard E. Mroch.

Charles W. Giesen, Giesen Law Offices, Madison, WI, for Defendant–Appellant Leslie J. Jensen.

James C. Reiher, Von Briesen, Purtell & Roper, Milwaukee, WI, for Defendant–Appellant Johnson F. Blake.

Franklyn M. Gimbel, Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Defendant–Appellant Randall E. Miller.

Edward John Hunt, Milwaukee, WI, for Defendant–Appellant Raymond L. Morgan, Jr.

Robert G. LeBell, Styler, Kostich, Lebell, Dobroski & McGuire, Milwaukee, WI, for Defendant–Appellant James E. Meinen, Jr.

William O. Marquis, Milwaukee, WI, for Defendant–Appellant Kevin P. O'Neill.

Daniel D. Resheter, Jr., Milwaukee, WI, for Defendant–Appellant Robert A. Kruppstadt.

Before FLAUM, MANION, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The appellants, Harvey Powers, Allen McVay, Kevin O'Neill, Raymond Morgan, Carl Warneke, Richard Mroch, James Meinen, Leslie Jensen, Robert Kruppstadt, Johnson Blake, and Randall Miller,[1] filed a joint emergency motion for immediate release and for a stay of any further proceedings in the district court. For the reasons that follow, we have concluded that the motion for immediate release is moot and that the request for a stay should be denied.

The underlying criminal case involves charges against the appellants under the federal anti-racketeering statutes. On May 30, 1997, a grand jury in the Eastern District of Wisconsin returned an indictment accusing them of these offenses. They were arraigned on that indictment in June 1997, at which time the magistrate judge ordered them detained under the authority of 18 U.S.C. § 3141. Sixteen months elapsed while pretrial activity went forward, and then on October 19, 1998, the district court entered an order addressing certain motions to suppress and motions to dismiss. See *United States v. O'Neill*, 27 F.Supp.2d 1121 (E.D.Wis. 1998).

---

1. David Kadlec was originally named as an appellant, but his attorney has since filed a supplement to the motion indicating that Kadlec is serving a Wisconsin state prison sentence. The orders of detention therefore do not affect him.

We construe Kadlec's supplement as a motion for voluntary dismissal of appeal No. 98–3792 under Fed. R.App. P. 42(b), and by separate order we have granted that motion.

Among those motions was one claiming that evidence collected through electronic surveillance had to be suppressed, because it related to crimes not specified in the authorizing orders for a Title III intercept, see 18 U.S.C. § 2516(1), and the government had not up until that time sought subsequent authorization to investigate additional crimes. Following this court's decision in *United States v. Brodson*, 528 F.2d 214 (7th Cir.1975), the district court concluded that "the government must seek subsequent authorization to add the additional offenses charged in the first indictment to the wiretap order, dismiss the first indictment against the defendants, and pursue a superseding indictment before a second and uninfected grand jury." *O'Neill*, 27 F.Supp.2d 1121, 1128.

The court then considered the question of what to do with the defendants while the government weighed its response to the order of dismissal, and it came to the following conclusion:

> Because, pursuant to *Brodson*, the entire indictment must be dismissed, those defendants detained on these charges would normally be entitled to release from custody. However, the court may stay their release pending the procurement of a superseding indictment or an appeal of the dismissal of the pending indictment. *See United States v. Alfonso*, 143 F.3d 772 (2d Cir.1998). Therefore, the court will provisionally order that all defendants detained on the offenses charged in the indictment be released from custody; however, the release order will be stayed for a period of 30 days to allow the government an opportunity to consider an appeal or seek a superseding indictment after compliance with 18 U.S.C. § 2517(5). If the government chooses to appeal or to seek a superseding indictment, it must move for an extension of the stay or move the court to vacate the release order once an untainted grand jury has returned a superseding indictment.

*O'Neill*, 27 F.Supp.2d 1121, 1129 (footnote omitted).

The government responded in two ways to the district court's order. On October 26, 1998, seven days after the order of dismissal, it filed a motion asking the court to reconsider its decision to dismiss the indictment. In addition, it took steps to obtain the necessary authorization for the expanded wiretap. At the same time, the defendants launched challenges to their continued detention. They filed notices of appeal to this court on dates ranging from October 23, 1998, through a final notice filed November 4, 1998. On November 2, 1998, the district court denied the government's motion to reconsider. Finally, on November 4, 1998, the defendants filed in this court their joint emergency motion for immediate release and a stay of further proceedings in the district court.

On November 10, a new grand jury returned an indictment that was a nearly verbatim replica of the first indictment, again charging the defendants with the same racketeering offenses. The defendants argue vociferously that this was a "new" indictment, because the old one had been dismissed, while the government labels it a "superseding" indictment. While there may be a difference between these two animals, we do not find it important for the matter presently before us, and we therefore decline the invitation to enter this part of the fray. Whatever type of indictment it was, the defendants were arraigned under it on November 19 and 20, 1998. On November 19, the government also submitted a motion to "confirm and continue release and detention status of defendants," in which it asked the court to keep the defendants in detention. (Note that the 30–day stay of the release order entered on October 19 would have expired on November 18; notwithstanding that fact, the defendants remained in custody throughout these proceedings.) The magistrate judge granted the government's November 19 motion in an order dated November 23. That order took the position that the November 10 indictment simply superseded the earlier indictment and that the earlier detention orders remained in effect without any need for new detention hearings. Finally, back in this court, on November 13 the government filed its response to the November 4 motion for release and a stay. In response to this court's order requesting briefing on the mootness issue and the present status of the detention or-

ders, both parties filed supplemental memoranda.

The only reason there is a conceivable question about the propriety of the continued detention of these defendants is because the government thought that it did not need to renew its motion for detentions if the new indictment contemplated by the October 19 order was returned within the 30–day period afforded by that order. It is a little hard to understand why it took that position, given the language of the order, but we trust that the confusion that has ensued will inspire the prosecutors to take more care next time around. We find it necessary to address only two of the issues that have been presented in the various filings before us: first, whether there are any appeals at all before us, given the dates of the notices of appeal, and second, whether these appeals have become moot.

At the time all but two of the defendants filed their notices of appeal, the government's motion for reconsideration of the district court's October 19 order had been filed and was still pending. (The appeals of two of the defendants, O'Neill and Kruppstadt, Nos. 98–3855 and 98–3856, were actually filed *after* the disposition of the motion to reconsider, on November 3 and 4 respectively. Thus, there is no question that they are timely, and the discussion that follows on this point does not pertain to them. These two appeals duplicated earlier appeals by the same individuals, Nos. 98–3757 and 98–3790, which had been dismissed pursuant to Fed. R.App. P. 42(b).)

Under this court's 1987 decision in *United States v. Gargano*, 826 F.2d 610 (7th Cir. 1987), the filing of the motion to reconsider would have meant that the notice of appeal was a nullity, and a new notice of appeal would have been necessary after disposition of the motion to reconsider. The *Gargano* court reached this result for purposes of Fed. R.App. P. 4(b), which governs appeals in criminal cases, specifically because it thought it important to keep the rules for criminal appellate practice consistent with civil appellate practice. *Gargano*, 826 F.2d at 612. If *Gargano* is still good law, then the pre-November 2 appeals are not properly before

us, because no new notices of appeal were filed thereafter. If later amendments to the rules modified *Gargano*, we must decide whether the appeals satisfy the newer criteria.

In our view, the premise underlying *Gargano* fell away with the 1993 amendments to Rule 4 of the appellate rules. More importantly, as we explain below, the appellate rules have just been amended again effective December 1, 1998, and it is our view that the amended rules govern this pending case because the changes in Rule 4 were purely stylistic. The Supreme Court's order promulgating the 1998 amendments to the appellate rules stated that "the foregoing amendments to the Federal Rules of Appellate Procedure shall take effect on December 1, 1998, and *shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending.*" 118 S.Ct. 403 (1998) (emphasis supplied). Under the circumstances here, we conclude that it is "just and practicable" to apply the amendment to these pending cases. Compare *Cleveland v. Porca Co.*, 38 F.3d 289, 294 (7th Cir.1994) (discussing the 1993 amendments to Fed. R.App. P. 3(c), and concluding that it was just and practicable to apply the amended rule to the pending case because the parties would not suffer any prejudice or injustice); accord *Frey v. City of Herculaneum*, 44 F.3d 667, 670 n. 1 (8th Cir.1995). We begin, therefore, with the language of the newly amended rule. Then, lest there be any question about the stylistic quality of the amendment, we explain why the same result would be proper under the 1993 language that has just been superseded.

Federal Rule of Appellate Procedure 4 now provides as follows, in pertinent part:

(b) Appeal in a Criminal Case

\* \* \*

(3) *Effect of a Motion on a Notice of Appeal*

(A) If a defendant timely makes any of the following motions under the Federal Rules of Criminal Procedure, the notice of appeal from a judgment of conviction must be filed within 10 days after the entry of the order disposing of the last

947

such remaining motion, or within 10 days after the entry of the judgment of conviction, whichever period ends later. This provision applies to a timely motion:

(i) for judgment of acquittal under Rule 29;

(ii) for a new trial under Rule 33, but if based on newly discovered evidence, only if the motion is made no later than 10 days after the entry of judgment; or

(iii) for arrest of judgment under Rule 34.

(B) A notice of appeal filed after the court announces a decision, sentence, or order—but before it disposes of any of the motions referred to in Rule 4(b)(3)(A)—becomes effective upon the later of the following:

(i) the entry of the order disposing of the last such remaining motion; or

(ii) the entry of the judgment of conviction.

(C) A valid notice of appeal is effective—without amendment—to appeal from an order disposing of any of the motions referred to in Rule 4(b)(3)(A).

We recognize that the situation before us is somewhat different from the one described in Rule 4(b)(3)(A) and (B), because here the motion to reconsider was filed by the prosecutor, not by the defendant. Nevertheless, we see no reason why that should make a difference to the rules for timeliness of an appeal. In the relatively small set of cases where the prosecutor has the right to take an appeal (which includes decisions to dismiss indictments, see 18 U.S.C. § 3731), the government should have the right to seek reconsideration in the district court within the same time frame the rules give to defendants to seek reconsideration. By the same token, if the government files a timely motion to reconsider, that motion should have the same effect on the time for filing an appeal as the analogous motions by a defendant identified in Rule 4(b)(3)(A) and referred to in Rule 4(b)(3)(B). In this case, the government's motion to reconsider the district court's October 19 order dismissing the indictment was filed exactly seven days later, on October 26, 1998. Fed.R.Crim.P. 29 gives a defendant seven days to file a motion for acquittal after the discharge of the jury; Rule 33 similarly affords a seven-day period for a motion for new trial after a verdict or a finding of guilty based on grounds other than newly discovered evidence; and Rule 34 gives seven days for a motion for arrest of judgment. By analogy to these rules, which are the ones to which Appellate Rule 4(b)(3)(A) refers, the government's motion seven days after the order was timely. Following the logic of Rule 4(b)(3)(B)(i), we therefore find that the defendants' notices of appeal filed while the government's motion was pending became effective upon the entry of the order disposing of the motion.

As we noted above, the same result would obtain even if we were to apply the pre-December 1998 version of the appellate rules. The critical change from the system *Gargano* construed occurred in 1993, when the rules were amended to create more flexibility in both civil and criminal appeals. Even before the amendment, Rule 4(a)(2) had provided that "a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Problems arose because the introductory clause to the pre–1993 rule made its "spring forward" quality inapplicable to a party who had filed one of the motions for reconsideration enumerated in Rule 4(a)(4), such as a post-trial motion for judgment as a matter of law or for a new trial filed within ten days of the judgment. See, *e.g.*, *Otis v. City of Chicago*, 29 F.3d 1159, 1166 (7th Cir.1994) (en banc); *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin*, 957 F.2d 515, 516 (7th Cir.), *cert. denied*, 506 U.S. 829, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992). The amendment to Fed. R.App. P. 4(a)(2) deleted the language that made paragraph (a)(2) inapplicable to notices of appeal filed while a post-trial motion under Rule 4(a)(4) was pending. Notices of appeal in civil cases meeting these criteria thus become effective upon the disposition of the post-trial motion. *Ogden v. San Juan County*, 32 F.3d 452, 454 n. 2 (10th Cir.1994), *cert. denied*, 513 U.S. 1090, 115

S.Ct. 750, 130 L.Ed.2d 650 (1995); *Otis*, 29 F.3d at 1166; *Lauderdale County Sch. Dist. v. Enterprise Consol. Sch. Dist.*, 24 F.3d 671, 681 (5th Cir.), *cert. denied*, 513 U.S. 988, 115 S.Ct. 484, 130 L.Ed.2d 397 (1994). See also *Lac du Flambeau Band*, 957 F.2d at 516 (indicating in dicta that, as amended, the rule would provide "that an appeal filed before the disposition of a motion to amend a judgment shall be held in abeyance and spring into force when the judge acts"); 16A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §§ 3950.4 and 3950.5, at 194–209 (2d ed.1996).

Even though the language of Rule 4(b) has always been slightly different from that of Rule 4(a), the drafters of the 1993 amendments made it clear that they were adopting the same approach for Rule 4(b) appeals as they spelled out for Rule 4(a)(2) appeals:

> The amendment also states that a notice of appeal filed before the disposition of any of the posttrial tolling motions becomes effective upon disposition of the motions.

See 1993 Advisory Comm. N. to Subdivision (b), Fed. R.App. P. 4(b). The Committee singled out *Gargano* as a case that had been out of line with the prevailing practice that it was codifying in the rule. *Id.*

■ The net result of this is that under either potentially applicable version of the rules, the defendants' notices of appeal that were filed prior to the disposition of the motion to reconsider became effective on November 2, the date on which the district court denied the government's motion for reconsideration. One important qualification remains, however: those notices of appeal are effective only to challenge the order of October 19, the November 2 order denying reconsideration, and matters ancillary to those orders, such as the continued incarceration defendants wish to challenge. They do not suffice to bring before this court any challenge to the magistrate judge's later order of November 23 continuing their detention under the November 10 indictment.

■ We turn then to the defendants' argument that they were entitled to immediate release under the district court's October 19 order, notwithstanding the fact that the court stayed that order pursuant to Fed.R.Crim.P. 12(h) for a 30–day period of time.[2] Whatever the merit of that argument may have been before the government obtained the second indictment, it is beside the point now. The magistrate judge's order of November 23, 1998, makes it clear that the defendants are now confined under the indictment of November 10. It is true that the magistrate judge construed that indictment to be a superseding indictment and he concluded that it was not necessary for him to hold new detention hearings. Whether or not the judge properly interpreted the new indictment has nothing to do with the defendants' alleged rights under the October 19 order, which is the only one before us.

■ The defendants have attempted to avoid mootness by urging that this is a situation "capable of repetition, yet evading review." They paint a dire picture of potential abuse in the Eastern District of Wisconsin, under which they will perpetually be detained under indictments that are dismissed, with 30–day periods of time during which they are incarcerated while they are under no formal charges at all thanks to Rule 12(h), which are followed by new indictments that allow further detentions. Nothing of the sort has happened here, of course, and we are not so pessimistic about the possibility of judicial relief if that parade of horribles occurs. Rule 12(h) itself requires the judge to continue detention for only a "specified" time. While we make no ruling on the issue at this time, the final sentence may imply that a Rule 12(h) extension cannot in itself affect the speedy trial clock, which would be another powerful protection of defendants' rights.

■ Defendants also suggest that district courts around the country might be abusing the rights of accused persons through misuse

---

2. Criminal Rule 12(h) provides as follows:
   If the court grants a motion based on a defect in the institution of the prosecution or in the indictment or information, it may also order that the defendant be continued for a specified time pending the filing of a new indictment or information. Nothing in this rule shall be deemed to affect the provisions of any Act of Congress relating to periods of limitations.

of Rule 12(h), and thus that the situation cries out for immediate appellate review. That is not what the "capable of repetition" doctrine covers, however. It contemplates that the particular party will never be able to bring a case quickly enough before the appellate court to secure meaningful review. See *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998) (doctrine is limited to the situation where two elements combine: (1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again). See also *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam). In addition, the dearth of reported cases under Rule 12(h) suggests that it is not causing problems on a regular basis. When all else fails, a party may seek a writ of mandamus, and it seems likely that someone might have done so if the person thought that the rule was either being abused, or that it violated the Rules Enabling Act, 28 U.S.C. § 2072. See also *In re Rhone–Poulenc Rorer Pharms., Inc.*, 138 F.3d 695, 697 (7th Cir.1998) ("Mandamus as a mode of correcting rulings by a trial judge is an available remedy only if the judge committed an error so egregious that it can fairly be described as usurpative and the party complaining of the error will suffer irreparable harm if it is not corrected."). Alternatively, a person who claims she is in custody without any legal authority can always seek a writ of habeas corpus; a case proceeding on that theory would inevitably bring up Rule 12(h) by way of the government's defense.

We therefore do not believe that our conclusion that these defendants have moot appeals will lead to widespread injustice in the district courts. Events simply overtook these appeals, and both parties will have ample opportunity before the district court to raise any points they have about the November 10 indictment, the continued detentions, or the merits. The appeals are DISMISSED for mootness.